UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TONY COFFEE, an individual,

                                    Plaintiff,

    v.

MARIOS STOLIDAKIS, an individual;
DOE individuals I through X; and ROE
corporations and organization I
through V, inclusive,

                              Defendants.

Case No.: 2:21-cv-02003-ART-EJY

ORDER

Before the Court is Defendant[1] Marios Stolidakis's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under F.R.C.P. 12(b)(6) (ECF No. 7), as well as Plaintiff Tony Coffee's motion for a preliminary injunction (ECF No. 13.)

Based on the record and in consideration of the relevant law, the Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction, grants in part and denies in part Defendant's motion to dismiss for failure to state a claim and denies Plaintiff's motion for a preliminary injunction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2020, Plaintiff Tony Coffee and Defendant Marios Stolidakis organized and formed Pinnacle Protection Group, LLC ("Pinnacle"), a private security company which provides patrol and event security services. (ECF No. 1 ("Complaint") ¶ 6.) Both Plaintiff and Defendant were listed as a Managing Member of Pinnacle in its company filings with the Secretary of State. (ECF No.

---

[1] Plaintiff included "DOE individuals I though X; and ROE corporations and organizations I through V, inclusive," in the caption of his Complaint, but did not reference any such Doe or Roe persons or entities in the Complaint. The Court will use the term "Defendant" to refer only to Marios Stolidakis.

10-2.) At least in the beginning, Plaintiff and Defendant agreed that the membership interest of Pinnacle would be split equally between them. (Complaint ¶ 7.) Plaintiff applied to the Nevada Private Investigators Licensing Board for a private patrolman's license on behalf of Pinnacle and was granted a license which listed Plaintiff as the Qualifying Agent for Pinnacle. (*Id.* ¶ 5; ECF No. 10-1.) Once Pinnacle was formed, an internet domain name was purchased and email accounts were set up for Pinnacle, which included, without limitation, the email addresses "pinnacleprotectiongroupllc@gmail.com" and "TC@pinnacleprotectiongroup2020.com." (Complaint ¶ 8.) Bank accounts were also set up for Pinnacle. (*Id.* ¶ 9.)

In the summer of 2021, the relationship between Plaintiff and Defendant began to deteriorate. Plaintiff alleges that shortly after Pinnacle's bank accounts were set up, Defendant began transferring funds from Pinnacle's bank accounts to personal accounts. (*Id.* ¶ 10.) Plaintiff further alleges that Defendant attempted to cut Plaintiff out of Pinnacle's business by contracting with clients and hiring subcontractors without Plaintiff's knowledge or consent. (*Id.* ¶ 13.) Defendant allegedly told clients not to contact Plaintiff and defamed Plaintiff by telling employees and clients that Plaintiff was stealing from the business and that Plaintiff had been diagnosed with early onset dementia. (*Id.* ¶¶ 14-15.) Defendant then, in early August 2021, allegedly locked Plaintiff out of Plaintiff's company email account, read Plaintiff's emails, and shared Plaintiff's emails with third parties. (*Id.* ¶ 16.)

The tension between Plaintiff and Defendant reached a boiling point in August of 2021, which culminated in Plaintiff ceasing his involvement with the company. Plaintiff alleges that in late August 2021, Defendant withdrew all the company funds in the Pinnacle bank accounts, opened a new bank account for Pinnacle at a different banking institution, and directed all subsequent client payments to Pinnacle to the new bank accounts. (*Id.* ¶ 17). Defendant then

allegedly told Plaintiff that he would not return any funds to Pinnacle for continued operations unless Plaintiff relinquished his membership interest in Pinnacle to Defendant and allowed Defendant to continue to operate Pinnacle using the private patrolman's license which Plaintiff had obtained and which was in Plaintiff's name, and which is necessary to legally engage in the enterprise of private patrol under Nevada law. (*Id.* ¶ 18.) When Plaintiff refused, Defendant filed an Amended List of Officers for Pinnacle with the Secretary of State which removed Plaintiff as a Managing Member and listed an individual named Leor Rosen as a Managing Member alongside Defendant. (*Id.* ¶ 19.) On or around October 2021, Defendant allegedly used Plaintiff's signature on Pinnacle's payroll checks to its employees without Plaintiff's permission. (*Id.* ¶ 20.) Defendant denies the allegations and claims that Plaintiff's ownership in Pinnacle was "diluted" due to his failure to make capital contributions to the company and his abandonment of his interest in the company. (ECF No. 7 at 3:18-21.)

Plaintiff's Complaint contains nine claims for relief: (1) conversion; (2) declaratory relief under NRS 30.040; (3) fraudulent misrepresentation; (4) defamation per se; (5) intentional interference with prospective economic advantage; (6) violation of NRS 205.477; (7) violation of the Stored Communications Act, 18 U.S.C § 2701; (8) unjust enrichment; and (9) injunctive relief. Plaintiff also pled a claim for injunctive relief and seeks a preliminary injunction to enjoin Defendant from: (1) personally possessing or otherwise diverting funds belonging to Pinnacle to outside accounts; (2) making false and defamatory statements about Plaintiff to third parties; (3) logging into and otherwise accessing Plaintiff's email account(s); and (4) forging Plaintiff's signature in any manner. (ECF No. 13.)

Defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. In addition, the parties dispute whether the submission of certain exhibits and declarations converts the Rule 12(b)(6) motion to dismiss

1    into a motion for summary judgment, as well as whether Plaintiff may properly

2    submit an amended response to Defendant's motion to dismiss.

3    **II.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER**

4    **JURISDICTION**

5        Plaintiff's sole federal claim is that Defendant violated the Stored

6    Communications Act, 18 U.S.C. § 2701 *et seq.* Because this Court has

7    jurisdiction over this claim, it rejects Defendant's motion to dismiss this action

8    under Fed R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[2]

9        Federal courts are courts of limited jurisdiction. *See Owen Equip. &*

10   *Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to

11   lack jurisdiction in a particular case unless the contrary affirmatively appears."

12   *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221,

13   1225 (9th Cir. 1989). Although the defendant is the moving party in a Rule

14   12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's

15   jurisdiction and therefore bears the burden of proving that the case is properly

16   in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)

17   (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, (1936)).

18       Dismissal for lack of subject-matter jurisdiction because of the inadequacy

19   of the federal claim is proper only when the claim is "so insubstantial,

20   implausible, foreclosed by prior decisions of this Court, or otherwise completely

21   devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a*

22   *Better Env't*, 523 U.S. 83, 89 (1998) (internal citations omitted). When the

23   question of jurisdiction and the merits of an action are "intertwined" such that

24   "the question of jurisdiction is dependent on the resolution of factual issues going

25   to the merits of an action[,]" dismissal for lack of subject matter jurisdiction is

26   _____

27   [2] Defendant attached a Declaration from Marios Stolidakis (ECF No. 7-1) in support of its Rule 12(b)(1) motion to dismiss. As Defendant points out, a district court may hear evidence regarding

28   jurisdiction without converting a Rule 12(b)(1) motion into a motion for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

improper. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Plaintiff claims that Defendant violated the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, when Defendant changed the settings on Plaintiff's Pinnacle email account to deny Plaintiff access to the email account. A person violates the Stored Communications Act if they "intentionally access[] without authorization" or "intentionally exceed[] an authorization to access" a facility through which an electronic communication service is provided. 18. U.S.C. § 2701(a)(1)-(2). Section 2707 grants a civil cause of action to enforce violations of the Act. 18 U.S.C. § 2707.

Defendant's jurisdictional argument boils down to a factual dispute about whether its actions fall within one of the exceptions to liability under § 2701(c), which provides, "this section does not apply with respect to conduct authorized ... by the person or entity providing a wire or electronic communications service[.]" 18 U.S.C. § 2701(c)(1). Defendant argues that because the email accounts he allegedly accessed and blocked were company email accounts, his access was authorized and falls within the § 2701(c)(1) exception for conduct authorized by the person or entity providing a wire or electronic communications service. (ECF No. 7 at 6:14-7:12.) Whether Defendant's conduct falls within a liability exception is not a jurisdictional argument, but instead one intertwined with the merits of the claim. Defendant has not cited a single case suggesting that this Court lacks jurisdiction and his citation to *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107 (3d Cir. 2004) (holding that the company, a large insurance company that provided the email service, was authorized to access the plaintiff's work email), underscores the fact that federal courts have jurisdiction to interpret the scope of the SCA and its exceptions. Federal courts have held that the emails are "wire or electronic communications" under the Act and that emails held on the servers of email providers are in "electronic storage." *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (holding that emails stored on

the servers of the internet service provider which provided email services to the plaintiff company were in "electronic storage" both before and after delivery); *Hately v. Watts*, 917 F.3d 770, 787 (4th Cir. 2019) ("[P]reviously delivered and opened emails stored on a web-based email client are in 'electronic storage[.]'"). Defendant has failed to show that Plaintiff's claim is so "implausible, foreclosed by prior decisions, ... or otherwise completely devoid of merit as to not involve a federal controversy." *Steel Co.*, 523 U.S. at 89. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court will consider each claim in turn.[3]

---

[3] The parties raise several procedural issues regarding exhibits. Plaintiff attached three exhibits to Plaintiff's response to Defendant's motion: a copy of the private patrolman's license from the Private Investigators Licensing Board (ECF No. 10-1), a copy of Pinnacle's filings for a business license with the Secretary of State (ECF No. 10-2), and an image of a check bearing Plaintiff's signature (ECF No. 10-3). These exhibits may be properly considered under Fed. R. Civ P. 10(c) without converting the Rule 12(b)(6) motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, the remaining declarations and exhibits in the pleadings, namely Defendant's second declaration (ECF No. 15-1), Plaintiff's declaration (ECF No. 16-1), Plaintiff's FOIA (ECF No. 16-2), and Plaintiff's copy of the Private Investigators Licensing Board meeting transcript (ECF No. 32-1) may be properly considered in evaluating the motion for a preliminary injunction, but not in the 12(b)(6) motion to dismiss, without converting the motion into a motion for summary judgment. *Id.* In evaluating the 12(b)(6) motion to dismiss.

1

### 1.   NRS 205.477

NRS 205.477 is similar to the federal Stored Communications Act, 18 U.S.C. § 2701, discussed above, and also enforceable by civil action, NRS 205.511. Like the Stored Communications Act, NRS 205.477 makes it a crime for a person to "knowingly, willfully, maliciously and without authorization interfere[] with, den[y] or cause[] the denial of access to or use of a computer, system or network to a person who has the duty and right to use it."  NRS 205.477. The statute provides an affirmative defense for a defendant who "reasonably believed" that they were "authorized to use or access" the computer, system, network, device, or service at issue and that the defendant's use or access was within the "scope of that authorization" or consent granted by the owner or user.

Defendant's argument regarding NRS 205.477 is fundamentally the same as his argument regarding the Stored Communications Act: Defendant argues that he cannot be liable for interfering with Plaintiff's access to Plaintiff's Pinnacle email account because Defendant was authorized to access the Pinnacle email accounts. Here, however, Defendant's argument is presented under Rule 12(b)(6), not 12(b)(1).[4]

Assuming all of the facts in Plaintiff's Complaint as true, Defendant exceeded the scope of Defendant's authority to access Plaintiff's Pinnacle email account and to deny Plaintiff access to the same, and thus Plaintiff properly states a claim under NRS 205.477. The parties do not dispute that Plaintiff and Defendant were coequal partners in Pinnacle when it was first formed. Under the

---

the Court will not consider those documents or the exhibits that were submitted for the hearing on the preliminary injunction (ECF No.'s 36-42.) Finally, the Court will construe Plaintiff's motion to amend Plaintiff's opposition (ECF No. 32) as a request to supplement. The Court agrees with Plaintiff that supplementation is warranted given that the Transcript of Proceedings from the Private Investigators Licensing Board's March 8, 2022 meeting is relevant to this case and occurred after Plaintiff's first opposition was filed. *See* L.R. 7-2(g). As explained above, this transcript will be considered with respect to the motion for preliminary injunction only.

[4] It does not appear that Defendant has moved to dismiss Plaintiff's Stored Communications Act claim under Rule 12(b)(6) for failure to state a claim. (ECF No. 7.) The Court notes, however, that Plaintiff's Stored Communications Act claim would likely survive a 12(b)(6) challenge for the reasons set forth in this section.

Nevada Limited Liability Company statutes, without a majority of the LLC members by equity interest consenting to Defendant's actions, Pinnacle would not have authorized Defendant's actions. *See* NRS 86.291 ("Except as otherwise provided … in the articles of organization or operating agreement, management of a limited-liability company is vested in its members proportionally in interest thereof."). Defendant thus cannot have taken unilateral action without Plaintiff's consent and claim to have been authorized by Pinnacle. Even assuming, arguendo, that Defendant may have been authorized by Pinnacle to access Plaintiff's Pinnacle email accounts, Defendant allegedly exceeded the scope of that the authorization when he changed the settings on Plaintiff's Pinnacle email accounts to deny access to Plaintiff. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (holding that common law notions of scope of consent govern the authorization inquiry under the Stored Communications Act).

The case cited by Defendant, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) is distinguishable because it did not involve a dispute regarding unauthorized email access. In *Brodsky*, the plaintiffs had given Apple authorization to access their Apple ID login information but claimed violations of both the federal Computer Fraud and Abuse Act and California's Cal. Penal Code § 502 when Apple initiated two-factor authentication on their devices after a software update. The District Court dismissed both claims because the plaintiffs did not rebut the assertion that Apple was authorized to install the software updates and generally to access their Apple ID login information. *Id.* at 129-32. Here, Plaintiff disputes Defendant's authority to access his Pinnacle email account and change the password to deny him access. *See id.* at 129 ("In situations where a plaintiff clearly revokes access to a party and not simply the means, manner, or method for such access, that party may be liable under the CFAA."). Defendant's motion to dismiss Plaintiff's civil action for violation of NRS 205.477 is denied.

## 2.   CONVERSION

Plaintiff's conversion claim asserts that Defendant is liable for exerting wrongful dominion over Plaintiff's membership interest in Pinnacle. (Complaint ¶¶ 22-23.) Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 74 Nev. 196, 326 P.2d 413, 414 (1958). "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. Whether a conversion has occurred is generally a question of fact for the jury." *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043, 1048 (2000). Though courts have been reluctant to recognize a claim for conversion of intangible property, *see, e.g., Custom Teleconnect, Inc. v. Int'l Tele-Servs.*, Inc., 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003) ("Plaintiff has not pointed to any Nevada case that allows for a conversion claim based on the misappropriation of confidential information."), a claim for conversion may lie for intangible property interests which are reflected in something tangible that can be physically taken. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565, 54 Cal. Rptr. 2d 468, 472 (1996). ("[T]he value of a stock certificate is not the cost of the paper, but the intangible interest it represents. When the certificate is stolen *or placed in another's name* without the owner's permission, the value of the loss is not the cost of the paper—a tangible—but the worth of the stock—an intangible.") (emphasis added).

Plaintiff alleges that he had a 50% interest[5] in Pinnacle when it was formed and appeared on Pinnacle's original business filings with the Secretary of State as a member of the LLC before Defendant filed an amended list of officers with

---

[5] Defendant points out that Plaintiff's Complaint alternates between describing Plaintiff's membership interest as a 50% interest and as a 51% interest. The Court notes that for the purposes of the claims involved in this case, the fact that Plaintiff has pled an ownership interest of at least 50% is sufficient. The parties do not dispute that Plaintiff was a coequal member of Pinnacle when it was first formed.

the Secretary of State in August 2021 which did not include Plaintiff. Like changing the name on a stock certificate, this act is an act of physical dominion over an intangible property interest and can thus give rise to a claim for conversion. Defendant's overall course of action has been to deny Plaintiff access to the company. This claim has been pled with particularity. Defendant's motion to dismiss Plaintiff's claim for conversion is therefore denied.

### 3.   DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff claims that "[p]ursuant to NRS 30.040, Plaintiff is entitled to a declaration of his statutory and contractual rights to his fifty-one percent membership interest in Pinnacle." (Complaint ¶ 27.) Defendant argues that declaratory judgments are only a form of relief, not a remedy. Under the Uniform Declaratory Judgments Act as adopted in Nevada, a person "interested under a … contract, or whose rights, status or other legal relations are affected by a statute … may have determined any question of construction or validity arising under the … statute [or] contract[.]" NRS 30.040(1). The conditions which must exist for declaratory relief to be granted are: (1) a justiciable controversy; (2) between persons whose interests are adverse; (3) by a person with a legally protectable interest in the controversy; and (4) the issue is ripe for judicial determination. *MB Am., Inc. v. Alaska Pac. Leasing*, 132 Nev. 78, 86, 367 P.3d 1286, 1291 (2016) (citing *Kress v. Corey*, 65 Nev. 1, 26, 189 P.2d 352, 364 (1948)). Because an independent cause of action is not required to seek a declaratory judgment under NRS 30.040, a declaratory judgment is properly considered a cause of action, not just a form of relief and here Plaintiff' meets the four requirements for a claim for declaratory relief under NRS 30.040. Therefore, Defendant's motion to dismiss Plaintiff's claim for a declaratory judgment under NRS 30.040 is denied.

Defendant correctly argues that injunctive relief is a remedy, not a claim as there is no equivalent to NRS 30.040 for injunctive relief. Without prejudice to

Plaintiff's claim for injunctive relief as a remedy, Defendant's motion to dismiss Plaintiff's claim for injunctive relief is granted.

### 4. FRAUD

Plaintiff's claim for fraud stems from Plaintiff's assertion that "Defendant falsely represented to Plaintiff that he agreed that ownership interest in Pinnacle would be split equally between them, i.e., a '50/50' split ownership interest, when in fact, at all times relevant herein, Defendant intended to slowly take over Pinnacle's operations and cut Plaintiff out of the company completely[.]" (Complaint ¶ 29.) A claim for fraudulent misrepresentation in Nevada requires: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998). Under Fed. R. Civ. P. 9(b), a party must state with particularity the circumstances constituting fraud.

Plaintiff has not met the burden of pleading fraud with particularity under Rule 9. Plaintiff did not include any details regarding specific conversations or communications in which a false statement was knowingly made to Plaintiff by Defendant. It is not clear that there ever was a false statement, for it is possible that Defendant intended to share ownership of Pinnacle equally during the initial stages, but then had other ideas. The parties do not dispute that Plaintiff was a coequal member of Pinnacle when Pinnacle was first formed. (ECF No. 10-2.) Defendant's motion to dismiss Plaintiff's claim for fraudulent misrepresentation is granted with leave to amend.

### 5. DEFAMATION PER SE

Plaintiff claims that Defendant knowingly made false and defamatory statements about Plaintiff to third parties, namely that Plaintiff was stealing from

1   Pinnacle and that Plaintiff had been diagnosed with early onset dementia.

2   (Complaint ¶ 34.) An action for defamation in Nevada requires: (1) a false and

3   defamatory statement; (2) an unprivileged publication to a third person; (3) fault,

4   amounting to at least negligence; and (4) actual or presumed damages. *Clark*

5   *Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385, 213 P.3d 496,

6   503 (2009). If the defamatory communication imputes a person's lack of fitness

7   for trade, business, or profession, or tends to injure the plaintiff in his or her

8   business, it is deemed defamation per se and damages are presumed. *Id.*

9       Plaintiff has provided enough information to survive a motion to dismiss by

10   alleging the contents of the allegedly defamatory statements and to whom they

11   were made. Plaintiff's Complaint states that "[i]n support of his efforts to

12   undermine any of [Plaintiff's] control over and/or involvement in Pinnacle's

13   business operations, [Defendant] defamed [Plaintiff] in front of employees and

14   clients[.] Notably, [Defendant] falsely claimed that Pinnacle was unable to make

15   payroll because [Plaintiff] was stealing from the business, and that [Plaintiff] was

16   diagnosed with and suffering from early onset dementia." (Complaint ¶¶ 14-15.)

17   These allegations put Defendant on notice of the contents of the statement and

18   the persons to whom they were made, and the approximate date of the statements

19   can be inferred from the context of the Complaint.

20       Defendant also argues that "[o]pinions are protected." (ECF No. 7 at 10:16.)

21   Generally, only assertions of fact, not opinion, can be defamatory. *Wynn v. Smith*,

22   117 Nev. 6, 16 P.3d 424, 431 (2001). But expressions of opinion may suggest that

23   the speaker knows certain facts to be true or may imply that facts exist that will

24   be sufficient to render the message defamatory if false. *Id.* The determination of

25   whether a statement is capable of a defamatory construction is a question of law.

26   *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225–26 (1981).

27       While it is not clear which statements Defendant claims are opinions, the

28   Court finds that the statements that Plaintiff was stealing from the business and

suffering from early onset dementia are assertions of fact that may be defamatory. Whether or not Plaintiff took a certain action (stealing from the company) or was diagnosed with a certain medical condition (early onset dementia) are falsifiable factual claims. Notably, Defendant does not argue that the statements are true. Defendant's motion to dismiss Plaintiff's claim for defamation per se is denied.

## 6.   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Plaintiff claims that Defendant interfered with his "prospective economic advantage with prospective customers in the private security and patrol business," which Defendant "intentionally harmed" by "falsely stating to customers of Pinnacle that Plaintiff was stealing from Pinnacle, and that Plaintiff was suffering from early onset dementia." (Complaint ¶¶ 39-40.) In order to establish a claim for interference with prospective economic advantage in Nevada, a plaintiff must establish the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing this relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result. *See Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1225 (1987).

Plaintiff has not identified a specific customer of Pinnacle who contemplated entering into a business relationship with Plaintiff. Defendant's motion to dismiss Plaintiff's claim for intentional interference with prospective economic advantage is granted with leave to amend.

## 7.   UNJUST ENRICHMENT

Plaintiff alleges that "Defendant received a benefit from Plaintiff by transferring nearly all of Pinnacle's profits to separate accounts, to Plaintiff's detriment as fifty-one percent owner of Pinnacle." (Complaint ¶ 57.) Plaintiff also incorporates the other allegations of the Complaint into the unjust enrichment

section. (*Id.* ¶ 56.) Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit such that it would be inequitable for him to retain the benefit without payment of the value thereof. *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nevada Sys. of Higher Educ.*, 137 Nev. Adv. Op. 37, 492 P.3d 540, 543 (2021). Benefit means any form of advantage, including but not limited to retention of money or property. *Id.*

It may be true, as Defendant asserts, that the funds that were transferred between bank accounts were Pinnacle's funds, which would make those transfers an injury to Pinnacle, not Plaintiff, for which Plaintiff could only seek redress through a derivative action. Plaintiff's claim is that Defendant has unjustly retained Plaintiff's interest in Pinnacle and unjustly benefitted as a result. Plaintiff conferred a benefit upon Defendant by founding Pinnacle with Defendant and obtaining Pinnacle's requisite licensure. Assuming all the facts in the Complaint as true, it would be unjust for Defendant to retain Plaintiff's 50% membership interest in Pinnacle, which may entitle the holder of the interest to certain distributions from Pinnacle, without paying for it. Defendant's motion to dismiss Plaintiff's claim for unjust enrichment is denied.

## IV.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction to enjoin Defendant from: (1) personally possessing or otherwise diverting funds belonging to Pinnacle to outside accounts; (2) making false and defamatory statements about Plaintiff to third parties; (3) logging into and otherwise accessing Plaintiff's email account(s); and (4) forging Plaintiff's signature in any manner. (ECF No. 13.) A preliminary injunction is an "extraordinary" remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Supreme Court clarified in *Winter* that to obtain an injunction, the plaintiff must establish: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable injury in the

absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Id.* at 20. On the irreparable injury element, a plaintiff seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction[,]" not merely possible. *Id.* at 22.

At a videoconference hearing on June 23, 2022, the Court heard testimony from Plaintiff Tony Coffee, Defendant Marios Stolidakis, and Leor Rozen, who became involved with Pinnacle after Plaintiff's departure. Having considered this evidence, noting the parties' objections, the Court finds that Plaintiff has not met his burden of showing that irreparable injury is likely (as opposed to merely possible) to occur in the future absent an injunction and denies the motion for that reason.

Plaintiff testified that he and Defendant formed Pinnacle in the summer of 2020 and that Plaintiff stated from the beginning that he would not be able to put a lot of money into the company. Plaintiff testified that their relationship soured in the summer of 2021. At that time, Defendant issued Plaintiff a series of "Capital Calls" and "Dilution Notices" which stated that if Plaintiff did not contribute capital to Pinnacle, Plaintiff's equity interest would be diluted. In the last of these notices, Plaintiff's equity interest was diluted to zero. Plaintiff maintains that these dilutions were not lawful and that he continues to hold a 50% equity interest in Pinnacle.

Regarding Defendant's alleged transfers of funds from Pinnacle to outside bank accounts, it appears that this practice may have occurred but has since ceased and is unlikely to resume. Plaintiff testified that in the spring and summer of 2021, he found Defendant's transfers of Pinnacle funds to Defendant's personal bank accounts "sketchy." Defendant testified that these transfers were made as reimbursements for company expenses such as the rent for the office, which Defendant put on his personal credit card for convenience, and Defendant

has bank records to confirm this. Defendant and Leor Rozen testified that since Plaintiff's departure, Leor Rozen took on the role of Chief Financial Officer of Pinnacle, wherein he ensures that all of Pinnacle's financial activities are properly approved and documented. The Court's main concern regarding the bank accounts would be for potential looting of the company by the Defendant which would make later relief on the merits difficult to administer. The Court finds this unlikely given Defendant's explanation for his prior actions and given the financial controls and procedures that have been implemented.

While Defendant denies making any defamatory statements, even if he did, as alleged, there does not appear to be an ongoing threat of him doing it again. Plaintiff testified that Defendant made defamatory statements about him to other employees in the Pinnacle office in the summer of 2021. He described that after departing from Pinnacle, he had difficulty obtaining clients, employees, and insurance for his new security company because the defamatory statements had been spread through the private security industry in Las Vegas, which is a small community. Defendant denied making the defamatory statements whatsoever. Although Plaintiff proffered two affidavits from individuals who claimed to have heard Defendant make defamatory statements about Plaintiff in August of 2021, Plaintiff did not identify specific incidents after the summer of 2021 where Defendant had made further defamatory statements. The Court finds that Plaintiff has not met his burden to show a likelihood that Defendant will continue to make defamatory statements regarding Plaintiff. Plaintiff testified that Defendant's defamatory statements have continued to harm him in his business and personal life. Although other individuals may be repeating the defamatory statements, Plaintiff has not shown that Defendant continues to make the statements.

Defendant's allegedly unauthorized access to Plaintiff's Pinnacle email account in August 2021 also appears unlikely to repeat due to changed

circumstances. Plaintiff testified that in August of 2021, he found himself unable to access the email account "TC@pinnacleprotectiongroup.com," and that he called GoDaddy, which hosts the email, and found out that the password had been changed. Defendant testified that this email account had been archived and has therefore sat dormant since August 2021. Plaintiff admitted that he has no evidence to suggest that Defendant improperly used the email to impersonate Plaintiff, disseminate confidential information, or engage in any other unauthorized use since that time.

Finally, Defendant's allegedly unauthorized use of Plaintiff's electronic signature in 2021, which appears to have been limited to a loan application and one round of payroll checks, appears unlikely to recur given the current circumstances. Plaintiff stated that his signature appeared on Pinnacle payroll checks without his authorization. Defendant testified that he did not know Plaintiff's signature was still appearing on the checks after Plaintiff's departure since the checks are handled by an outside payroll company. Defendant stated that Pinnacle has changed to a different payroll company and that Plaintiff's signature will no longer appear on any checks. The Court finds Defendant's explanation for the payroll check signatures persuasive. Regarding the use of Plaintiff's signature to apply for a small business loan, Plaintiff and Defendant testified that they were initially in conversation about obtaining a small business loan for Pinnacle, but that Plaintiff ultimately did not consent to the use of his information. The Court finds that there is little to suggest that there is a likelihood of this occurring again, especially given Plaintiff's lack of involvement with the company for nearly ten months.

In sum, even assuming that the unlawful acts alleged in the Complaint and supported by evidence at the hearing may have occurred in the summer of 2021, those facts are not sufficient to show that they are likely to occur in the future, as opposed to merely possible. The Court finds that Defendant has not met his

burden of showing that irreparable harm is likely to occur in the absence of a preliminary injunction. Given that Plaintiff has not met this necessary element, the Court does not reach the likelihood of success on the merits, the balance of equities, or public interest.

**V.    CONCLUSION**

It is hereby ordered that Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

It is hereby ordered that Defendant's motion to dismiss for failure to state a claim is GRANTED IN PART AND DENIED IN PART.

It is hereby ordered that Plaintiff's motion for a preliminary injunction is DENIED.

DATED THIS 6th day of July 2022.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

18